UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANNIE KANNIKA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>US CITIZENSHIP AND IMMIGRATION SERVICES, et al.,<br><br>Defendants. | Case No. C20-547RSM<br><br>ORDER RE: SUMMARY JUDGMENT MOTIONS |

This matter comes before the Court on the parties' cross-motions for summary judgment. Dkts. #35 and #42. For the reasons stated below, the Court denies Plaintiffs' Motion and grants Defendants' Motion, dismissing Plaintiff's claims.

### I. BACKGROUND

Plaintiffs in this case are the married couple Annie Kannika and Yoeun Phoeun. Yoeun Phoeun was previously married to Savy Krub. Dkt. #1 at ¶ 7.1, 7.7. In 2005, Savy Krub and her sister, Nakry Krub, simultaneously filed forms I-129F on behalf of Phoeun, the beneficiary in this litigation, and his cousin, Ms. Khiem, who were both citizens and nationals of Cambodia. R145-143.[1] The I-129F was approved for Phoeun and he entered the United States in K-1 status as a fiancée of a U.S. citizen in 2006. R97, 98. Phoeun and Krub married in December 2006.

---

[1] Defendants have filed the administrative record with the Court in paper form. *See* Dkts. #17-20. The citations refer to that record by the R page number appearing at the bottom of the page. For some reason, Defendants have submitted these pages in reverse-numerical order.

ORDER - 1

R97. In February 2007, Krub filed a form I-130 (Petition for Alien Relative) on behalf of Phoeun and he filed an I-485 to adjust his status based on the marriage.

A U.S. citizen may file a form I-130 petition to classify a noncitizen as an immediate relative if he or she is able to demonstrate that the requisite relationship exists. 8 U.S.C. § 1154 (a)(1)(A)(i). However, section (c) of 8 U.S.C. § 1154 prohibits approval of such a petition on behalf of a beneficiary spouse who has previously sought to obtain immigration benefits by engaging in a fraudulent marriage. *Id*. This provision is referred to as the fraudulent marriage bar. *Id*.

After the filing of an I-130 petition, USCIS is required to investigate the validity of the claimed familial relationship. 8 U.S.C. § 1154(b). Phoeun and Krub appeared for an interview with USCIS in November 2007. R97. The USCIS officer asked questions about their relationship and determined that they failed to provide sufficient documentation to establish a good faith marriage. *Id*. In response to the request to provide documentation establishing that the marriage was entered into in good faith, they submitted only a joint 2006 tax return and a marriage certificate, which demonstrated that they had married, not that they "entered into the marriage in good faith to make a life together." R97.

Because the evidence submitted was insufficient, a USCIS officer conducted a site visit to the couple's alleged residence in February of 2008. R97. At that time, the officer spoke with an individual who identified himself as Samouy Krub, Ms. Krub's brother. *Id*. Mr. Krub showed the officer around the residence including the bedroom that Phoeun used. That bedroom contained a single bed just large enough for one person to sleep in and no items such as clothes or other personal effects appearing to belong to a female in the eyes of the officer. *Id*., R144. The officer also observed "a photo collage hanging on the wall which contained

pictures of [Phoeun] posing with another woman" in romantic poses. R97, R144. Phoeun, who was in the home, refused to say who the other woman was. R144. Mr. Krub told the USCIS officer that Ms. Krub did not live at that address with Phoeun and the marriage (and that of Ms. Krub's sister) were arranged by family members for immigration purposes. R143.

Two USCIS officers conducted a second site visit to the same location in October 2009. R96, 143. At that time, Phoeun refused to allow the officers to see his bedroom. *Id*. Based on what the officers were able to observe, there was no evidence that Ms. Krub lived at the residence at that time. *Id*.

USCIS subsequently invited Phoeun and Krub for interviews on three separate occasions to discuss the findings of the two site visits. R96, R140-138 (listing interview dates as November 2009, January 2010, and February 2010). The two did not appear for any of these interviews. R96. They also failed to explain why they missed the interviews and did not request to have the interviews rescheduled. *Id*. Plaintiffs allege in their complaint that Phoeun and Krub determined in "early 2010" that their marriage would not last and decided to separate. Complaint at ¶ 7.5. Nevertheless, they continued to pursue the I-130 and I-485 applications based on the marriage.

USCIS sent petitioner Krub a Notice of Intent to Deny ("NOID") in April 2011 that covered the above information and offered her a chance to respond. R96. Krub did not respond to the NOID within the time allotted and USCIS concluded it did not provide any evidence to overcome the derogatory evidence in the NOID. *Id*.

For those reasons, USCIS determined that Phoeun had not entered into a bona fide marriage with Krub, but instead that he had entered into his marriage with Krub for the purpose of evading U.S. immigration laws. R96. USCIS denied the I-130 filed by Krub on behalf of

ORDER - 3

Phoeun in July 2011 and denied Phoeun's I-485 application to adjust his status. R99-95, R54-R52. Phoeun and Krub filed for dissolution of their marriage in September 2014, and their marriage was dissolved in December 2014. R230.

Phoeun later married Plaintiff Kannika. In October 2015, Kannika filed an I-130 on behalf of Phoeun and Phoeun filed an I-485. USCIS sent Kannika a NOID explaining that the agency was intending to deny the petition, explaining that, regardless of the bona fides of the current marriage, the agency could not grant the I-130 if Phoeun had entered into a previous marriage for the purpose of evading immigration laws. Plaintiffs responded to the NOID. R373. USCIS denied the I-130 based on the marriage fraud bar. R376-372.

Phoeun appealed the decision to the Board of Immigration Appeals ("BIA"), which upheld USCIS's decision. R407-405. The BIA ruled:

> Based on our review of the record, we agree that there is substantial and probative evidence in the record that the beneficiary's prior marriage (to Savy Krub) was fraudulent. On February 18, 2008, during a site visit conducted by USCIS officers at the beneficiary's address of record, 10210 19th Place West, Everett, WA, Samouy Krub, brother of Savy Krub, told a USCIS officer that Savy Krub did not live at that address and that her marriage to the beneficiary was "fake." Director's Dec. at 2-3. In addition, a USCIS officer noted that the bedroom purportedly shared by Savy Krub and the beneficiary "contained no items belonging to a female." *Id*. at 3. October 22, 2009, another site visit was conducted by USCIS officers and the beneficiary denied the officers' request to see the marital bedroom. *Id*. The beneficiary and Savy Krub also failed to appear for interviews at the USCIS Seattle Field Office on November 19, 2009, January 5, 2010, and February 16, 2010. The declaration from Samouy Krub, submitted for the first time on appeal, and which contends that he did not tell USCIS that the marriage was fake, does not persuade us that his earlier statement was false. The petitioner does not explain why Samouy Krub was previously unavailable when the Director was considering the petition. While we have considered the petitioner's explanations, we agree with the Director. In this case, the 'quality and quantity of circumstantial evidence [is] sufficient to create such a strong inference of fraud that it rises to

ORDER - 4

> the level of substantial and probative.' Matter of P. Singh, 27 I&N Dec. at 608.

R406. The BIA concluded, "There is substantial and probative evidence that the beneficiary's prior marriage was entered into for the purpose of evading immigration laws, and that section 204(c) of the Act applies in the instant case and serves to bar the visa petition that was filed by the petitioner on the beneficiary's behalf." R406. The BIA also noted that petitioner submitted additional evidence with her appeal, but because the BIA "is an appellate body, [it] will not accept evidence offered for the first time on appeal." *Id*.

Plaintiffs filed their complaint with this Court on April 9, 2020, under section 10(b) of the Administrative Procedures Act ("APA"). Dkt. #1.

## II. DISCUSSION

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd*

ORDER - 5

*on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. Analysis**

Under § 706 of the APA, which governs judicial review of administrative decisions, a court may review and set aside an agency's final action only if the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). While a court's review under the APA should be "searching and careful," it is not *de novo*. *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989). A district court may not substitute its judgment for that of the agency. *See id.*; *Bear Lake Watch, Inc. v. FERC*, 324 F.3d 1071, 1076 (9th Cir. 2003) (explaining that if the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the agency).

As the Ninth Circuit has explained, "regardless of the strength of the current marriage, 'no petition shall be approved' if USCIS determines that the noncitizen spouse previously entered into a marriage 'for the purpose of evading the immigration laws.'" *Zerezghi v. USCIS*, 955 F.3d 802, 804 (9th Cir. 2020) (citing 8 U.S.C. § 1154(c)). The bar "is mandatory, not discretionary: If the noncitizen committed marriage fraud at any time in the past, 'no petition shall be approved' at any time in the future." *Id.* (citing 8 U.S.C. § 1154(c)); *Vazquez v. Holder*, 602 F.3d 1003, 1014 n.11 (9th Cir. 2010).

USCIS determines whether a marriage is fraudulent under the Immigration and Naturalization Act by determining the couple's intent at the time of the marriage. *See Lutwak v. U.S.*, 344 U.S. 604, 73 (1953). To meet its initial burden, "the government often uses documents in its possession, interviews with the couple, and observations made during site

ORDER - 6

visits to the couple's marital residence." *Zerezghi*, 955 F.3d at 805. "If the government finds that there is 'substantial and probative evidence' of marriage fraud, it issues a Notice of Intent to Deny the immigration petition." *Id*. "The burden then shifts to the petitioner to rebut that finding. If the petitioner cannot rebut the charge to the BIA's satisfaction, the petition is denied." *Id*. (internal citation omitted). The agency can consider both direct and circumstantial evidence of marriage fraud. *Manor v. Nielsen*, 2020 U.S. Dist. LEXIS 138311, *11-12 (D. Ore. July 6, 2020). "If the petition is denied, the petitioner may appeal that decision to the BIA, and the BIA's decision constitutes the final agency action." *Id*. at 12 (citing 8 C.F.R. § 1003.1(d)(iii)).

Plaintiffs argue that the Court should apply a strict scrutiny standard to determine whether Phoeun previously engaged in marriage fraud. The Court agrees with USCIS that this is not the correct standard. Plaintiffs cite no authority applying a strict scrutiny standard in immigration marriage fraud cases. Their citations to cases analyzing the constitutionality of laws regarding marriage equality and reproductive freedom are inapposite. The Ninth Circuit has held that the correct standard is preponderance of the evidence. *Zerezghi*, 955 F.3d at 816.

Plaintiffs address the above evidence thusly:

> In this case the only "documented" evidence in the record is a report made by a controversial, now-retired USCIS agent regarding two visits to the couple's home in February 2008 and October 2009. He then wrote the report over a year later in December 2010.
>
> At neither visit was Savy Krub at the home, and during the October 2009 visit there was no translator during his alleged conversation with Mr. Phoeun.
>
> The most "incriminating" part in the report is Officer Srein's rendition of his conversation with Ms. Krub's brother Samouy Krub. (CAR 145-143) Samouy Krub vehemently disputes everything that Officer Srein states in the report – a report written

ORDER - 7

> by Srein, not contemporaneously, but more than two- and one-half years after the site visit. (CAR R-389-388).

Dkt. #35 at 13.

The Court finds that substantial and probative evidence, stated above, supports the agency's finding that plaintiff Phoeun engaged in marriage fraud in his first marriage. Plaintiffs do not point to evidence previously submitted to USCIS rebutting the vast majority of the above evidence of marriage fraud. USCIS explains why the report would have been generated late in 2010 after further investigation, argues Plaintiffs have not submitted evidence that a translator was needed at any time and that in any event there is evidence above that did not require translation. Based on the above record, the Court can conclude that USCIS's actions were not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

Plaintiffs make several tangential arguments about the inadequacy of the administrative record in this case, none of which are particularly relevant to the APA claim. USCIS correctly summarizes why these issues are irrelevant. *See* Dkt. #42 at 14–15. The Court finds that Plaintiffs have failed to demonstrate a violation of the APA.

### III. CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that Plaintiffs' Motion for Summary Judgment, Dkt. #35, is DENIED and Defendants' Cross Motion for Summary Judgment, Dkt. #42, is GRANTED. Plaintiffs' claims are DISMISSED. This case is CLOSED.

DATED this 2nd day of July, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER - 8